**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL SIMMONS, NINA MOORE, and NAIROBY OTERO, on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>EAST HARLEM BOTTLING CO., LLC d/b/a EAST HARLEM BOTTLING CO., LEO LAUER, and DARCIE SICILIANO,<br><br>        Defendants. | Civil Case No.: 1:26-cv-06898<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Michael Simmons ("Simmons"), Nina Moore ("Moore"), and Nairoby Otero ("Otero") (together, "Plaintiffs"), by and through their attorneys, Nettle Law LLC, and on behalf of themselves and others similarly situated, hereby allege as follows against Defendants East Harlem Bottling Co., LLC d/b/a East Harlem Bottling Co. ("EHBC" or the "Restaurant"), Leo Lauer ("Lauer"), and Darcie Siciliano ("Siciliano") (collectively, "Defendants"):

## NATURE OF THE CLAIMS

1. Defendants own and operate a bar and restaurant in New York, New York, doing business under the name "East Harlem Bottling Co."

2. Defendants engage in a common, willful, and deliberate policy and practice of denying Plaintiffs and other similarly situated Tipped Workers (defined below) their minimum wages by improperly paying them at a "tipped" minimum wage rate without satisfying the strict tip credit requirements of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL").

3. Defendants also engage in a common, willful, and deliberate policy and practice of

1

unlawfully participating in Plaintiffs' and Tipped Workers' tip pool.

4.      Defendants have also consistently failed to furnish Plaintiffs and Tipped Workers with: (1) FLSA- and NYLL-compliant Notices of Tip Credit; (2) NYLL-compliant Notices of Pay Rate; and (3) NYLL accurate Wage Statements, as required by law.

5.      Simmons's, Moore's, and Otero's claims against Defendants to redress these wrongs are brought, in part, under the FLSA as a collective action, pursuant to 29 U.S.C. § 216(b), and applicable regulations thereunder, on behalf of themselves and all other similarly situated Tipped Workers employed by Defendants at any time during the full statute of limitations period.

6.      Plaintiffs' claims are also brought, in part, under the NYLL, and applicable regulations thereunder, as a class action, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of themselves and all other similarly situated Tipped Workers employed by Defendants at any time during the full statute of limitations period.

## **JURISDICTION AND VENUE**

7.      Pursuant to 28 U.S.C. § 1331, the Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiffs' rights under the FLSA.

8.      The Court also has supplemental jurisdiction over Plaintiffs' related claims arising under state law pursuant to 28 U.S.C. § 1367.

9.      Venue is proper under 28 U.S.C. § 1391 because Defendants' principal place of business is located in this District and a substantial portion of the events or omissions giving rise to this action occurred in this District.

## PARTIES

### A.   Plaintiff Michael Simmons

10.   Simmons is a resident of New York State and was employed by Defendants from on or around February 2, 2026, until on or around June 24, 2026.

11.   At all relevant times, Simmons was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

### B.   Plaintiff Nina Moore

12.   Moore is a resident of New York State and was employed by Defendants from on or around April 4, 2025, until on or around January 25, 2026.

13.   At all relevant times, Moore was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

### C.   Plaintiff Nairoby Otero

14.   Otero is a resident of New York State and was employed by Defendants from on or around July 31, 2025, until on or around February 13, 2026.

15.   At all relevant times, Otero was an "employee" of Defendants within the meaning of all applicable statutes and regulations.

### D.   Defendant East Harlem Bottling Co., LLC

16.   East Harlem Bottling Co., LLC d/b/a East Harlem Bottling Co. ("EHBC") is a limited liability company with its principal place of business located at 1711 Lexington Avenue, New York, New York 10029.

17.   At all relevant times, EHBC controlled and directed the terms of employment and compensation of Plaintiffs and all others similarly situated.

18.   At all relevant times, EHBC established, implemented, disseminated, and

3

controlled the employment policies applicable to Plaintiffs and all others similarly situated, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiffs and all others similarly situated.

19.     At all relevant times, EHBC maintained and exercised its power to hire, fire, discipline, and promote Plaintiffs and all others similarly situated.

20.     At all relevant times, EHBC was an "employer" of Plaintiffs and all others similarly situated within the meaning of all applicable statutes and regulations.

21.     At all relevant times, EHBC was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and NYLL and the regulations thereunder.

22.     Upon information and belief, at all relevant times EHBC had an annual gross volume of sales in excess of $500,000.00.

**E.      Defendant Leo Lauer**

23.     Lauer is one of two co-owners of EHBC and is a resident of New York State.

24.     At all relevant times, Lauer maintained and maintains operational control of EHBC, possessed and possesses an ownership interest in EHBC, and controlled and controls significant functions of EHBC.

25.     At all relevant times, Lauer controlled and directed the terms of employment and compensation of Plaintiffs and all others similarly situated.

26.     At all relevant times, Lauer maintained and exercised or delegated his power to hire, fire, discipline, and promote Plaintiffs and all others similarly situated.

27.     At all relevant times, Lauer maintained day-to-day control, oversight, and direction of Plaintiffs and all others similarly situated, including, *inter alia*, scheduling, work allocation,

4

task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiffs and all others similarly situated.

28.    At all relevant times, Lauer was an "employer" of Plaintiffs and all others similarly situated within the meaning of all applicable statutes and regulations.

**F.    Defendant Darcie Siciliano**

29.    Siciliano is one of two co-owners of EHBC and is a resident of New York State.

30.    At all relevant times, Siciliano maintained and maintains operational control of EHBC, possessed and possesses an ownership interest in EHBC, and controlled and controls significant functions of EHBC.

31.    At all relevant times, Siciliano controlled and directed the terms of employment and compensation of Plaintiffs and all others similarly situated.

32.    At all relevant times, Siciliano maintained and exercised or delegated her power to hire, fire, discipline, and promote Plaintiffs and all others similarly situated.

33.    At all relevant times, Siciliano maintained day-to-day control, oversight, and direction of Plaintiffs and all others similarly situated, including, *inter alia*, scheduling, work allocation, task supervision, monitoring work product, payroll, and other employment practices applicable to Plaintiffs and all others similarly situated.

34.    At all relevant times, Siciliano was an "employer" of Plaintiffs and all others similarly situated within the meaning of all applicable statutes and regulations.

<strong><u>FACTS</u></strong>

**A.    Background**

35.    Defendants own and operate a bar and restaurant in New York County, New York, doing business as East Harlem Bottling Co.

5

36. East Harlem Bottling Co. opened in or about 2016.

37. Plaintiffs and other employees of the Restaurant worked as Servers or Bartenders (collectively, "Tipped Workers").

38. Defendants employ approximately seven Tipped Workers at any given time.

**B.    Defendants' Failure to Pay Wages Due to an Invalid Tip Credit**

39. Defendants maintained and maintain a policy and practice of denying Plaintiffs and Tipped Workers their wages owed to them.

40. Defendants paid Plaintiffs and Tipped Workers at rates below the applicable minimum wage based on an invalid tip credit.

41. Defendants systematically denied Plaintiffs and Tipped Workers their wages in several ways, including by implementing an unlawful tip-pooling scheme and failing to provide compliant tip-credit Notices.

### i.    Defendants' Invalid Tip-Pooling Scheme

42. Defendants implemented an unlawful tip-pooling scheme by using the same Toast point-of-sale ("Toast POS") system that Plaintiffs and Tipped Workers used.

43. Under individually registered employee numbers, Plaintiffs and Tipped Workers used Toast POS to clock in and out to record their hours worked, open checks, place orders, process transactions, and then export an itemized report of total sales, credit card transactions, cash transactions, credit card tips collected and any cash tips reported.

44. Under their own individually registered employee numbers, Defendants used the same Toast POS system to record their hours worked, open checks, place orders, process transactions, and then export an itemized report of total sales, credit card transactions, cash transactions, credit card tips collected, and any cash tips reported.

45. When Plaintiffs and Tipped Workers worked alongside Defendants, Plaintiffs and Tipped Workers shared responsibilities with Defendants for the checks they opened, including taking orders for food and drinks, making drinks, running food and drinks to those tables, and performing regular Bartender or Server duties to those tables.

46. When Plaintiffs and Tipped Workers worked alongside Defendants, Defendants performed supervisor and/or managerial duties including re/ordering food, beverage, and consumables, and handled issues with guests that required managerial approval and/or access to the Toast POS that was not provided to Plaintiffs or Tipped Workers.

47. Defendants also used Toast POS to process transactions for pre-contracted buyouts/banquets.

48. Defendants did not regularly merge the transactions they completed under their employee number to Plaintiffs or any Tipped Worker working the same shift as Defendants.

49. Plaintiffs never processed transactions or sales reports for pre-contracted buyouts/banquets and were never aware of any agreed-upon gratuity charges, administrative fees, if charged, nor any tip amounts authorized by the contracting party.

50. At the completion of any given shift, Defendants required Plaintiffs and Tipped Workers to submit all cash collected that included an amount for sales and an amount for tips.

51. Thereafter, Defendants collected the total credit-card and cash tips earned during each shift. On shifts that Lauer and/or Siciliano worked alongside Plaintiffs and Tipped Workers, Defendants divided the pooled tips among the Plaintiffs and Tipped Workers working that shift and Lauer and/or Siciliano, thereby permitting owners and managers to retain a share of Plaintiffs' and Tipped Workers' tips.

52. Through this tip-pooling scheme, Defendants retained approximately twenty-five

percent (25%) to fifty percent (50%) of the tips and gratuities intended for Plaintiffs and Tipped Workers on affected shifts.

### ii. Defendants' Failure to Provide a Proper Tip Credit Notice or Tip Records

53. Pursuant to the FLSA, before applying the tip credit, Defendants must inform employees, including Plaintiffs and Tipped Workers, of the tip-credit provisions of the FLSA. 29 C.F.R. § 531.59.

54. Defendants must inform Plaintiffs and Tipped Workers of: (i) the amount of the cash wage that is to be paid; (ii) the additional amount that Defendants must pay to meet the minimum wage; (iii) that all tips received by Plaintiffs and Tipped Workers must be retained by them, except for a tip-pooling arrangement limited to employees who customarily and regularly receive tips; and (iv) that the tip credit shall not apply to any employee who has not been informed of the tip credit.

55. Defendants did not provide Plaintiffs and Tipped Workers with the FLSA tip credit provisions before applying the tip credit to their wages.

56. Pursuant to the NYLL, before applying a tip credit, Defendants must provide Plaintiffs and Tipped Workers with a "Notice of Tip Credit." NYLL § 195(1); N.Y. Comp. Codes R. & Regs. (NYCRR) tit. 12, § 146-2.2.

57. The Notice of Tip Credit must state each Tipped Workers': (i) hourly rate; (ii) overtime rate; (iii) amount of the tip credit; (iv) regular pay day; and (v) extra pay that is required if tips are insufficient to bring them up to the statutory minimum wage.

58. Defendants did not provide Plaintiffs with an FLSA and NYLL compliant Notice of Tip Credit, or with any tip-credit Notice at all.

59. Defendants never maintained or provided Plaintiffs and Tipped Workers with tip-

distribution records compliant with the NYLL. 12 NYCRR § 146-2.17.

60.     As such, Plaintiffs and Tipped Workers are entitled to recover the difference between the hourly rates they were paid and the applicable state minimum wage rates they should have been paid for the hours they worked.

61.     Plaintiffs and Tipped Workers are also entitled to recover the tips that Defendants unlawfully misappropriated and should have been distributed to Tipped Workers.

**C.     Defendants' Failure to Provide Notices of Pay Rate and Accurate Wage Statements**

62.     The NYLL requires that Defendants provide Plaintiffs and Tipped Workers, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; . . . the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary[,]" which is commonly referred to as a Notice of Pay Rate.  NYLL § 195(1)(a).

63.     Throughout the statutory period, Defendants never provided Plaintiffs and Tipped Workers with Notices of Pay Rate that accurately reflected their pay or applicable deductions.

64.     The NYLL also requires that Defendants furnish Plaintiffs and Tipped Workers with accurate Wage Statements with each payment of wages. NYLL § 195(3).

65.     Throughout the statutory period, Defendants never furnished accurate Wage Statements to Plaintiffs and Tipped Workers.

66.     Upon information and belief, Defendants chose not to provide these required

Notices and Wage Statements to Plaintiffs and Tipped Workers to avoid informing them of their rights under the NYLL and therefore avoid paying them the wage rates due to them.

67. As a result of Defendants' failure to provide a Notice of Pay Rate and accurate Wage Statements, Plaintiffs and Tipped Workers suffered concrete harm.

68. As a result of Defendants' failure to provide Notices of Pay Rate, Plaintiffs and Tipped Workers were deprived of information necessary to understand the lawful rates of pay to which they were entitled, the amount and basis of any tip credit claimed by Defendants, and whether their wages satisfied the applicable minimum-wage requirements. This informational deprivation prevented Plaintiffs and Tipped Workers from timely identifying and challenging Defendants' unlawful application of the tip credit and resulting underpayment of wages, thereby causing them to remain deprived of wages for longer than they otherwise would have been had accurate Notices been provided.

69. Likewise, as a result of Defendants' failure to furnish accurate Wage Statements, Plaintiffs and Tipped Workers lacked contemporaneous records accurately identifying the tip credit and other allowances claimed, the tips attributed to them, and the gross and net wages paid. Without accurate statements, Plaintiffs and Tipped Workers could not timely determine the amount of wages and tips withheld from them, verify whether each payment complied with the NYLL, or promptly seek correction and payment. Defendants' failure therefore prolonged Plaintiffs' and Tipped Workers' loss of the use of their earned wages and tips and impaired their ability to calculate and recover the amounts owed.

**D.    Plaintiff Michael Simmons**

70. Simmons worked at EHBC as a bartender from on or about February 2, 2026, to on or about June 24, 2026.

71.    Simmons's duties as a bartender included, *inter alia*, setting up the bar for service, taking orders and making drinks for guests throughout the restaurant, processing transactions and completing closing duties such as cleaning and submitting a report of his cash and credit card sales and tips and/or gratuities, and submitting all cash collected for sales and tips and/or gratuities to Defendants.

72.    During the earlier portion of his employment, Simmons generally worked approximately five days per week. Around the middle of his employment, Simmons reduced his schedule to three days per week. During the latter period, his regular schedule generally consisted of Mondays from approximately 4:00 p.m. to 1:00 a.m., Fridays from approximately 11:00 a.m. to 7:00 p.m., and Sundays from approximately 10:00 a.m. to 5:00 p.m.

73.    As an example, for the week of April 13 to April 19, 2026, Simmons's schedule was Monday from 4:00 p.m. to 1:00 a.m.; Friday from 11:00 a.m. to 7:00 p.m.; and Sunday from 10:00 a.m. to 5:00 p.m. Simmons worked a total of twenty-four (24) hours this work week.

74.    From the start of his employment to the end of his employment on or about June 24, 2026, Defendants paid Simmons $11.35 per regular hour worked.

75.    Throughout his employment, Defendants misappropriated tips and/or gratuities owed to Simmons by participating in the tip pool and retaining tips and/or gratuities at an equal share of other Tipped Workers that participated in the tip pool for any given shift.

76.    Throughout his employment, Simmons regularly observed Defendant Lauer employ Defendants' unlawful tip-pooling scheme on Simmons's regularly scheduled Friday shift.

77.    On June 16, 2026, Simmons worked alongside Defendant Lauer, serving guests at the Restaurant.

78.    During that shift, Simmons shared responsibilities with Lauer for the checks he

11

opened, including taking orders for food and drinks, making drinks, running food and drinks to those tables, and performing regular bartender duties to those tables.

79.     Also during that shift, Lauer had supervisor and/or managerial authority that was not provided to Simmons and exercised that authority.

80.     At the completion of his shift, through the Toast POS, Simmons generated a report of his cash and credit card sales, gratuities, cash tips, and credit card tips. The total he earned for that shift in gratuities ($63.00), credit card tips ($476.66), and cash tips ($26.24) was $565.90.

81.     Upon reviewing his pay statement covering June 16, 2026, Simmons noticed that the tips reported to him were a fraction of what was earned for that week.

82.     Through a text message, Simmons asked Lauer about the discrepancy; Lauer responded with tip amounts reported for each day that Simmons worked that week, including June 19, 2026.

83.     Lauer reported that he paid Simmons "$319.49 tips," much less than the $565.90 on Simmons's report of cash and credit card sales, gratuities, cash tips, and credit card tips.

84.     Simmons asked Lauer whether he participated in the tip pool. Lauer confirmed that he did.

85.     Specifically, Lauer confirmed that he opened and processed transactions in the same Toast POS system that Simmons used, but under Lauer's own employee number.

86.     Lauer unlawfully retained the tips and/or gratuities that should have gone to Simmons.

87.     Defendants never provided Simmons with a Notice of Tip Credit that met the requirements of the FLSA and NYLL before applying the tip credit to his wages.

88.     Defendants never provided Simmons with a Notice of Pay Rate that met the

requirements of the NYLL, including the requirement to provide Simmons the Notice of Pay Rate within ten days after commencing employment.

89.     Defendants never provided Simmons with accurate Wage Statements.

**E.     Plaintiff Nina Moore**

90.     Moore worked at EHBC as a server and bartender from on or about April 4, 2025, through on or about January 25, 2026.

91.     Moore's duties as a server included, *inter alia,* setting up the restaurant for service, taking orders and serving guests food and beverages, bussing tables, processing transactions and completing closing duties such as cleaning and submitting a report of her cash and credit card sales and tips and/or gratuities, and submitting all cash collected for sales and tips and/or gratuities.

92.     Moore's duties as a bartender included, *inter alia*, setting up the bar for service, taking orders and making drinks for guests throughout the restaurant, processing transactions and completing closing duties such as cleaning and submitting a report of her cash and credit card sales and tips and/or gratuities, and submitting all cash collected for sales and tips and/or gratuities to Defendants.

93.     Throughout her employment, Moore's schedule varied, and she generally worked approximately four to five shifts per week in a combination of server and bartender roles.

94.     Her server shifts generally lasted approximately four to five hours and sometimes six hours. Her server/bartender shifts generally lasted approximately five hours, while weekend brunch shifts varied.

95.     Moore generally worked approximately twenty-one (21) to twenty-five (25) hours per workweek.

96.     As an example, for the week of September 1 to September 7, 2025, Moore was

13

scheduled to work on Monday 11:00 a.m. to 4:00/4:30 p.m. as a bartender/server; Tuesday 11:00 a.m. to 4:00 p.m. as a server; Friday 5:00 p.m. to 9:00 p.m. as a server; Saturday 6:00 p.m. to 11:00 p.m. as a server; and Sunday 1:00 p.m. to 6:15 p.m. as a server.

97.    Moore worked approximately twenty-five (25) hours during the week of September 1 to September 7, 2025.

98.    From the start of her employment to December 31, 2025, Defendants paid Moore $11.00 per regular hour worked.

99.    From January 1, 2026, to the end of her employment on or about January 25, 2026, Defendants paid Moore $11.35 per regular hour worked.

100.    Throughout her employment, Defendants misappropriated tips and/or gratuities owed to Moore by participating in the tip pool and retaining tips and/or gratuities at an equal share of other Tipped Workers that participated in the tip pool for any given shift.

101.    For example, on November 2, 2025, the day of the New York City Marathon, EHBC received a substantially higher volume of guests than it typically served. Moore worked that day as a server and observed that Lauer and Siciliano were clocked in to the POS under their own registered employee numbers.

102.    During that shift, Moore shared responsibilities with Siciliano and Lauer for the checks they opened, including taking orders for food and drinks, running food and drinks to those tables, and performing regular server duties to those tables.

103.    Also during that shift, Siciliano and Lauer had supervisor and/or managerial authority that was not provided to Moore and exercised that authority.

104.    Moore and other Tipped Workers that worked that shift expected significantly increased earnings for that week.

14

105. Upon receiving her paycheck and related pay statement covering the pay period including November 2, 2025, Moore noticed that tips reported on her pay statement were much lower than what she and other Tipped Workers expected.

106. Moore and other affected Tipped Workers shared concerns about the lower-than-expected tips reported on their pay statements.

107. Moore observed Defendants engaging in the unlawful tip-pooling scheme on, *inter alia*, the following dates: (a) in 2025: September 6, 8, 13, 17, 21; October 24, 30; November 30; December 28; and (b) in 2026: January 1, 10, and 11.

108. Additionally, on September 21, 2025, Moore observed Defendant Siciliano state to Defendant Lauer that she forgot to "do her tips" and that the restaurant "made a lot of money" that day.

109. Defendants never provided Moore with a Notice of Tip Credit that met the requirements of the FLSA and NYLL before applying the tip credit to her wages.

110. Defendants never provided Moore with a Notice of Pay Rate that met the requirements of the NYLL, including the requirement to provide Moore with a Notice within ten days after commencing employment.

111. Defendants never provided Moore with accurate Wage Statements.

**F.     Plaintiff Nairoby Otero**

112. Otero worked at EHBC as a bartender and server from on or about July 31, 2025, through on or about February 13, 2026.

113. Otero's duties as a bartender included, *inter alia*, setting up the bar for service, taking orders and making drinks for guests throughout the restaurant, processing transactions and completing closing duties such as cleaning and submitting a report of her cash and credit card sales

and tips and/or gratuities, and submitting all cash collected for sales and tips and/or gratuities.

114. Otero's duties as a server included, *inter alia,* setting up the restaurant for service, taking orders and serving guests food and beverages, bussing tables, processing transactions and completing closing duties such as cleaning and submitting a report of her cash and credit card sales and tips and/or gratuities, and submitting all cash collected for sales and tips and/or gratuities to Defendants.

115. Throughout her employment, Otero's schedule varied. She regularly worked on Mondays and Tuesdays and also worked additional Thursday or Friday shifts from time to time. The number of shifts and total hours scheduled varied by workweek.

116. As an example, during the week of September 1 to September 7, 2025, Otero was scheduled to work as a bartender on Tuesday from approximately 4:00 p.m. to 12:45 a.m.; Thursday from approximately 4:00 p.m. to 10:00 p.m.; and Friday from approximately 11:00 a.m. to 4:00 or 5:00 p.m. Otero worked approximately nineteen and three-quarter (19.75) hours to twenty and three-quarter (20.75) hours during the week of September 1 to September 7, 2025.

117. From the start of her employment to December 31, 2025, Defendants paid Otero $11.00 per regular hour worked.

118. From January 1, 2026, to the end of her employment on or about February 13, 2026, Defendants paid Otero $11.35 per regular hour worked.

119. Throughout her employment, Defendants misappropriated tips and/or gratuities owed to Otero by participating in the tip pool and retaining tips and/or gratuities at an equal share of other Tipped Workers that participated in the tip pool for any given shift.

120. For example, in or around September or October 2025, Otero worked as a bartender performing her usual duties. Defendant Siciliano performed the usual duties of a server by clocking

16

in to the Toast POS system under her registered employee number, processing transactions, completing closing duties such as cleaning, submitting a report of her cash and credit card sales and tips and/or gratuities, and submitting all cash collected for sales and tips and/or gratuities.

121. During that shift, Otero shared responsibilities with Siciliano for the checks she opened, including taking orders for food and drinks, making drinks, running food and drinks to those tables, and performing regular bartender duties to those tables.

122. Also during that shift, Siciliano had supervisor and/or managerial authority that was not provided to Otero and exercised that authority.

123. Based on her observations of Siciliano's use of the Toast POS, Otero reviewed her next pay statement covering the relevant pay period.

124. Otero's pay statement included credit card and cash tips that were well below an expected amount based on her calculations.

125. The following week, Otero asked Defendant Lauer to review tip distribution records to account for the missing tips and/or gratuities.

126. Instead of producing documentation of the distribution of tips and/or gratuities for tip pool participants for any given shift, Lauer sent Otero a text only containing Otero's hours worked that week and totals for tips and/or gratuities distributed to her for that week.

127. As another example of Defendants' unlawful tip-pooling scheme, on Saturday, November 29, 2025, Otero was scheduled and worked as a bartender while another Tipped Worker also worked. At approximately 2:00 p.m., Defendants Lauer and Siciliano arrived at the Restaurant. Siciliano directed Otero to close her checks and complete her shift while the other Tipped Worker continued working. Defendants Lauer and Siciliano opened checks under their own registered employee numbers, instead of opening checks under the employee number of the

17

remaining Tipped Worker.

128.    Otero asked Siciliano why she did not open checks under the remaining Tipped Worker's employee number to which Siciliano responded, "Because I'm coming in and clocking in. Doesn't that make sense?"

129.    Upon information and belief, Lauer and/or Siciliano misappropriated tips for that shift and all other shifts in which Lauer and/or Siciliano clocked into the same Toast POS system that Otero used, opened checks, completed transactions, collected credit card and cash tips and/or gratuities, and retained tips for themselves at an equal share of a tip pool in which Otero participated.

130.    Defendants never provided Otero with a Notice of Tip Credit that met the requirements of the FLSA and NYLL before applying the tip credit to her wages.

131.    Defendants never provided Otero with a Notice of Pay Rate that met the requirements of the NYLL, including the requirement to provide Otero with a Notice of Pay Rate within ten days after commencing employment.

132.    Defendants never provided Otero with accurate Wage Statements.

### FLSA COLLECTIVE ACTION ALLEGATIONS

133.    Plaintiffs Simmons, Moore, and Otero ("FLSA Plaintiffs") bring this action, in part, as a collective action under the FLSA and applicable regulations thereunder.

134.    FLSA Plaintiffs seek to maintain claims, pursuant to FLSA § 216(b), on behalf of themselves and all other Tipped Workers who have been employed by Defendants at any time during the full statute of limitations period (the "FLSA Collective").

135.    At all relevant times, FLSA Plaintiffs and the FLSA Collective were similarly situated, had substantially similar job requirements, were paid in the same manner and under the same common policies, plans, and scheme, and were subject to Defendants' practices of failing to

compensate FLSA Plaintiffs and the FLSA Collective for wages due to Defendants' misappropriation of portions of the tips and gratuities of FLSA Plaintiffs and the FLSA Collective by retaining and failing to distribute them, in violation of 29 U.S.C. § 203(m)(2)(B).

136. Defendants were not entitled to take a tip credit against FLSA Plaintiffs' and the FLSA Collective's wages.

137. Throughout the full statute of limitations period, Defendants have been fully aware of the duties performed by FLSA Plaintiffs and the FLSA Collective, and that those duties were not exempt from the provisions of the FLSA.

138. Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged FLSA Plaintiffs and the FLSA Collective.

139. As a result of Defendants' conduct, they are liable to FLSA Plaintiffs and the FLSA Collective for the full amount of their unpaid wages with interest, an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiffs and the FLSA Collective.

140. While the exact number of the FLSA Collective is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, on information and belief Plaintiffs believe there are approximately twenty-five (25) other similarly situated persons who were employed by Defendants during the full statute of limitations period.

141. Plaintiffs are currently unaware of the identities of the members of the FLSA Collective.

142. Accordingly, Defendants should be required to provide Plaintiffs with a list of all persons employed by Defendants during the full statute of limitations period, along with their last

19

known addresses, telephone numbers, and email addresses, so Plaintiffs can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate in it.

**CLASS ACTION ALLEGATIONS**

143.    Plaintiffs bring this action, in part, as a class action under the NYLL and applicable regulations thereunder.

**A.    Class Definition**

144.    Plaintiffs seek to maintain claims, pursuant to FRCP 23, on behalf of themselves and a class of all other Tipped Workers who have been employed by Defendants at any time during the full statute of limitations period (the "NYLL Class").

145.    Plaintiffs allege, on behalf of themselves and the NYLL Class, that Defendants violated the NYLL by, *inter alia*: (i) failing to pay Plaintiffs and the NYLL Class at or above the applicable state minimum wage rate for all hours worked because Defendants were not entitled to claim any tip credit as they failed to meet the statutory requirements under the NYLL; (ii) misappropriating tips due to Plaintiffs and the NYLL Class members; (iii) failing to provide accurate Notices of Pay Rate; and (iv) failing to furnish accurate Wage Statements.

146.    Plaintiffs and the NYLL Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

147.    The wage practices described in this Complaint are part of Defendants' normal course of conduct.

148.    The claims brought pursuant to the NYLL may be pursued by all similarly situated persons who do not opt out of the NYLL Class, pursuant to FRCP 23.

**B.**    **Requirements of FRCP 23(a)**

**i.**    **Numerosity and Impracticability of Joinder**

149.    The members of the NYLL Class are so numerous that joinder of all members is impracticable.

150.    While the exact number of the members of the NYLL Class is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe there are at least approximately fifty (50) members of the NYLL Class.

151.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**ii.**    **Common Questions of Law and Fact**

152.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the NYLL Class and predominate over any questions only affecting the members of the NYLL Class individually.

153.    The questions of law and fact that are common to Plaintiffs and the NYLL Class include, without limitation:

(a)    Whether Defendants employed Plaintiffs and the NYLL Class within the meaning of the New York Labor Law;

(b)    Whether Defendants failed to pay Plaintiffs and the NYLL Class at or above the applicable state minimum wage;

(c)    Whether Defendants properly provided written notice to all tipped employees, consistent with the requirements of the NYLL, that Defendants were taking a tip credit;

(d)    Whether Defendants improperly misappropriated portions of the tips and gratuities due to Plaintiffs and the NYLL Class;

21

(e)     Whether Defendants accurately tracked the amounts of tips and gratuities earned each day and maintained records thereof;

(f)     Whether Defendants failed to provide Plaintiffs and the NYLL Class with Notices of Pay Rate;

(g)     Whether Defendants failed to furnish accurate Wage Statements to Plaintiffs and the NYLL Class; and

(h)     Whether Plaintiffs and the NYLL Class are entitled to unpaid wages and tips, liquidated damages, statutory damages, interest, and attorneys' fees and costs.

B.     Therefore, the common question requirement of FRCP 23(a) is satisfied.

### iii.     Typicality of Claims and Relief Sought

154.    Plaintiffs' claims are typical of the claims of the members of the NYLL Class they seek to represent.

155.    Plaintiffs and the NYLL Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

156.    The wage practices suffered by Plaintiffs, and the damages resulting therefrom, are sadly typical of Defendants' treatment of their Tipped Workers generally, and of the NYLL Class specifically.

157.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

### iv.     Adequacy of Representation

158.    Plaintiffs will fairly and adequately protect the interests of the NYLL Class because their interests are coextensive and aligned with those of the members of the NYLL Class.

159.    Plaintiffs have no interests adverse to the NYLL Class they seek to represent and

22

have retained competent and experienced counsel.

160.    Plaintiffs are willing and able to represent the NYLL Class as fairly and vigorously as they pursue their similar individual claims.

161.    Plaintiffs have retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the demands necessary to litigate a class action of this size and complexity.

162.    The combined interests, experience, and resources of Plaintiffs and their counsel to competently litigate the individual and NYLL Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**C.      Requirements of FRCP 23(b)(1)**

163.    Without certification of the NYLL Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

164.    Accordingly, certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiffs, the NYLL Class, and Defendants.

165.    By filing this Complaint, Plaintiffs are preserving the rights of the NYLL Class with respect to the statute of limitations on their claims.

166.    Therefore, not certifying a class would substantially impair and/or impede the remaining members of the NYLL Class's ability to protect their interests.

**D.      Requirements of FRCP 23(b)(2)**

167.    Defendants acted on grounds, described herein, generally applicable to Plaintiffs and the NYLL Class by denying Plaintiffs and the NYLL Class all wages owed, minimum wages,

23

and failing to furnish proper Notices of Pay Rate and accurate Wage Statements.

168. These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiffs and the NYLL Class as a whole.

169. Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to, and denial of, all wages owed, minimum wages, misappropriated gratuities, Notices of Pay Rate and accurate Wage Statements.

170. Declaratory and injunctive relief are the factual and legal predicates for Plaintiffs' and the NYLL Class's entitlement to monetary and non-monetary remedies for such wage violations.

171. Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**E.** **Requirements of FRCP 23(b)(3)**

172. The common issues of fact and law affecting Plaintiffs' claims and those of the NYLL Class—including, without limitation, the common issues identified in the paragraphs above—predominate over issues affecting only individual claims.

173. A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and the claims of the NYLL Class.

174. The cost of proving Defendants' pattern and practice of denying minimum, and other wages makes it impractical for the members of the NYLL Class to pursue their claims individually.

175. This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the NYLL Class (they must have worked for Defendants as Tipped Workers during the statutory period), as well as the common

24

questions of law and fact described herein.

## FIRST CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: MISAPPROPRIATION OF TIPS
### (*On Behalf of Plaintiffs and the FLSA Collective*)

176.    Plaintiffs, on behalf of themselves and the FLSA Collective, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

177.    29 U.S.C. § 203(m)(2)(B) prohibits employers from retaining tips received by employees for any purpose.

178.    29 U.S.C. § 216(b) prescribes that "any employer who violates section 3(m)(2)(B) shall be liable to the employee or employees affected in the amount of the sum of any tip credit taken by the employer and all such tips unlawfully kept by the employer, and in an additional equal amount as liquidated damages."

179.    Defendants willfully violated the FLSA by retaining the tips and failing to distribute them to the Plaintiffs and the FLSA Collective.

180.    As a result of Defendants' violations, Plaintiffs and the FLSA Collective have suffered damages and are entitled to recover their misappropriated tips, liquidated damages, attorneys' fees and costs, and pre-judgment and post-judgement interest.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: MISAPPROPRIATION OF TIPS
### (*On Behalf of Plaintiffs and the NYLL Class*)

181.    Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

182.    NYLL § 196–d and regulations issued thereunder, prohibit employers from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee. See 12 NYCRR §§ 146-2.14 –2.17.

183.    Defendants willfully violated these provisions by retaining and failing to distribute

tip earnings to Plaintiffs and the NYLL Class.

184. As a result of Defendants' willful violation of NYLL § 196-d and New York Department of Labor Regulations ("NYDOL Regulations"), Plaintiffs and the NYLL Class suffered damages and are entitled to recover their misappropriated tips, liquidated damages, attorneys' fees and costs, and pre-judgment and post-judgment interest.

**THIRD CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY MINIMUM WAGE**
***(On Behalf of Plaintiffs and the NYLL Class)***

185. Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

186. During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, et seq., and 650, et seq., as well as all applicable regulations thereunder.

187. The NYLL requires covered employers, including Defendants, to compensate Tipped Workers at a rate not less than the applicable state minimum wage for all hours worked under 40 hours in a workweek.

188. Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants pay them minimum wages under the NYLL, and they are entitled to be paid minimum wages by Defendants for all hours worked under 40 hours in a workweek during the full statute of limitations period.

189. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiffs and the NYLL Class at a rate not less than the applicable state minimum wage for all hours worked under 40 hours in a workweek.

190. As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at a rate not less than the applicable state minimum wage for all hours worked under 40 hours in a

workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

191. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

192. Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover the total amount of their unpaid wages, an additional equal amount in liquidated damages, pre-judgment interest, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED**
*(On Behalf of Plaintiffs and the NYLL Class)*

193. Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

194. During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, et seq., and 650, et seq., as well as all applicable regulations thereunder.

195. The NYLL requires covered employers, including Defendants, to compensate Plaintiffs and the NYLL Class at their established regular rates of pay for all hours worked in a workweek.

196. Plaintiffs and the NYLL Class were not exempt from the requirement and are entitled to be paid by Defendants at their established regular rates of pay for all hours worked in a workweek, during the full statute of limitations period.

197. Throughout the full statute of limitations period, Defendants have engaged in a common policy and practice of failing to pay Plaintiffs and the NYLL Class at their established regular rates of pay for all hours worked.

198. As a result of Defendants' failure to compensate Plaintiffs and the NYLL Class at

27

their established regular rates of pay for all hours worked, Defendants have violated the NYLL and/or applicable regulations thereunder.

199. Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiffs and the NYLL Class in accordance with the NYLL.

200. Defendants' violations of the NYLL have significantly damaged Plaintiffs and the NYLL Class and entitle them to recover damages to the greatest extent permitted by law, including, inter alia, the total amount of their unpaid wages, an additional equal amount in liquidated damages, pre-judgment interest, and attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: NOTICES OF PAY RATE**
***(On Behalf of Plaintiffs and the NYLL Class)***

201. Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

202. During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, et seq., as well as all applicable regulations thereunder.

203. The NYLL requires covered employers, including Defendants, to provide Tipped Workers, "at the time of hiring, a notice containing the following information: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; . . . the regular pay day designated by the employer [ ]; the name of the employer; any 'doing business as' names used by the employer;  the physical address of the employer's main office or principal place of business, and a mailing address if different;  the telephone number of the employer; plus such other information as the commissioner deems material and necessary,"

28

which is commonly referred to as a Notice of Pay Rate.  NYLL § 195(1)(a).

204.    Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants provide them with Notices of Pay Rate.

205.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to provide Notices of Pay Rate to Plaintiffs and the NYLL Class.

206.    As a result of Defendants' failure to provide Notices of Pay Rate to Plaintiffs and the NYLL Class, Defendants have violated, inter alia, NYLL § 195.

207.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper Notices of Pay Rate to Plaintiffs and the NYLL Class in accordance with the NYLL.

208.    Further, due to Defendants' failure to provide proper Notices of Pay Rate, Plaintiffs and the NYLL Class suffered a concrete informational and monetary injury beyond the statutory violation itself.

209.    As a result of Defendants' failure to provide Notices of Pay Rate, Plaintiffs and Tipped Workers were deprived of information necessary to understand the lawful rates of pay to which they were entitled, the amount and basis of any tip credit claimed by Defendants, and whether their wages satisfied the applicable minimum-wage requirements. This informational deprivation prevented Plaintiffs and Tipped Workers from timely identifying and challenging Defendants' unlawful application of the tip credit and resulting underpayment of wages, thereby causing them to remain deprived of wages for longer than they otherwise would have been had accurate Notices of Pay Rate been provided.

210.    Defendants' violations significantly damaged Plaintiffs and the NYLL Class and

29

entitle them to recover $50 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

<b><u>SIXTH CAUSE OF ACTION</u></b><br/><b><u>VIOLATIONS OF THE NYLL: ACCURATE WAGE STATEMENTS</u></b><br/><b><i>(On Behalf of Plaintiffs and the NYLL Class)</i></b>

211. Plaintiffs, on behalf of themselves and the NYLL Class, hereby repeat and reallege the foregoing allegations as if set forth fully herein.

212. During the full statutory period, Plaintiffs and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 190, et seq., as well as all applicable regulations thereunder.

213. The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages;  name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; . . . and net wages." NYLL § 195(3).

214. Plaintiffs and the NYLL Class were not exempt from the requirement that Defendants provide them with proper Wage Statements.

215. Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of unlawfully failing to furnish accurate Wage Statements to Plaintiffs and the NYLL Class.

216. As a result of Defendants' failure to furnish accurate statements to Plaintiffs and the NYLL Class, Defendants have violated, inter alia, NYLL § 195.

217. Further, due to Defendants' failure to furnish accurate Wage Statements, Plaintiffs

30

and the NYLL Class suffered a concrete informational and monetary injury beyond the statutory violation itself.

218.    As a result of Defendants' failure to furnish accurate Wage Statements, Plaintiffs and Tipped Workers lacked contemporaneous records accurately identifying the tip credit and other allowances claimed, the tips attributed to them, and the gross and net wages paid. Without accurate statements, Plaintiffs and Tipped Workers could not timely determine the amount of wages and tips withheld from them, verify whether each payment complied with the NYLL, or promptly seek correction and payment. Defendants' failure therefore prolonged Plaintiffs' and Tipped Workers' loss of the use of their earned wages and tips and impaired their ability to calculate and recover the amounts owed.

219.    Defendants' violations significantly damaged Plaintiffs and the NYLL Class and entitle them to recover $250 for each workday the violation occurred, not to exceed $5,000, plus attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, respectfully request that this Court:

A.    Declare that the practices complained of herein are unlawful under applicable federal and state law;

B.    Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.    Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide FLSA Plaintiffs with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and email addresses

31

of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.      Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiffs with a list of all members of the NYLL Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiffs can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.      Designate Plaintiffs as the representatives of the NYLL Class, and their counsel of record as class counsel;

F.      Determine the damages sustained by FLSA Plaintiffs and the FLSA Collective as a result of Defendants' violations of the FLSA, and award those damages against Defendants and in favor of FLSA Plaintiffs and the FLSA Collective, plus such pre-judgment and post-judgment interest as may be allowed by law;

G.      Determine the damages sustained by Plaintiffs and the NYLL Class as a result of Defendants' violations of the NYLL, and award those damages against Defendants and in favor of Plaintiffs and the NYLL Class, plus such pre-judgment and post-judgment interest as may be allowed by law;

H.      Award Plaintiffs, the FLSA Collective, and the NYLL Class an additional equal amount as liquidated damages;

I.      Award Plaintiffs, the FLSA Collective, and/or the NYLL Class their reasonable attorneys' fees and costs and disbursements in this action including, without limitation, any accountants' or experts' fees; and

J.      Grant Plaintiffs, the FLSA Collective, and/or the NYLL Class such other and

32

further relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, on behalf of themselves, the FLSA Collective, and the NYLL Class, hereby demand a trial by jury on all issues of fact and damages.

Dated: August 12, 2026          **NETTLE LAW LLC**
     Astoria, New York

                    By:  */s/ Brian E. Nettle*
                       Brian E. Nettle

                    3119 Newtown Avenue
                    Suite 502
                    Astoria, New York 11102
                    Tel: (646) 992-9213
                    Fax: (855) 756-1642
                    geno@nettle-law.com

                    *Attorney for Plaintiffs, the Proposed FLSA*
                    *Collective, and the Proposed NYLL Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL SIMMONS, NINA MOORE, and NAIROBY OTERO, on behalf of themselves and others similarly situated,<br><br>              Plaintiffs,<br>         v.<br><br>EAST HARLEM BOTTLING COMPANY CO., LLC d/b/a EAST HARLEM BOTTLING COMPANY, LEO LAUER, and DARCIE SICILIANO,<br>              Defendants. | Civil Case No.:<br><br>**CONSENT TO JOIN LAWSUIT** |

I, Michael Simmons, hereby consent to join and become a party plaintiff in the above-captioned action (the "Action") to seek relief for unpaid wages and other damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, including pursuant to 29 U.S.C. § 216(b). I understand that this Action is brought as a collective action under the FLSA and that I must affirmatively opt in by signing and filing this Consent to Join. I authorize Nettle Law LLC and its attorneys to represent me in this Action for all purposes, including settlement negotiations. I understand that I will be bound by any judgment, settlement, or other resolution of the Action, whether favorable or unfavorable, to the extent permitted by law.

Michael Simmons
Print Name

08 / 11 / 2026
Date

Signature

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL SIMMONS, NINA MOORE, and NAIROBY OTERO, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br>v.<br><br>EAST HARLEM BOTTLING COMPANY CO., LLC d/b/a EAST HARLEM BOTTLING COMPANY, LEO LAUER, and DARCIE SICILIANO,<br>Defendants. | Civil Case No.:<br><br>**CONSENT TO JOIN LAWSUIT** |

I, Nina Moore, hereby consent to join and become a party plaintiff in the above-captioned action (the "Action") to seek relief for unpaid wages and other damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., including pursuant to 29 U.S.C. § 216(b). I understand that this Action is brought as a collective action under the FLSA and that I must affirmatively opt in by signing and filing this Consent to Join. I authorize Nettle Law LLC and its attorneys to represent me in this Action for all purposes, including settlement negotiations. I understand that I will be bound by any judgment, settlement, or other resolution of the Action, whether favorable or unfavorable, to the extent permitted by law.

Nina Moore
_____
Print Name

08 / 11 / 2026
_____
Date

_____
Signature

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MICHAEL SIMMONS, NINA MOORE, and NAIROBY OTERO, on behalf of themselves and others similarly situated,<br><br>               Plaintiffs,<br><br>      v.<br><br>EAST HARLEM BOTTLING COMPANY CO., LLC d/b/a EAST HARLEM BOTTLING COMPANY, LEO LAUER, and DARCIE SICILIANO,<br><br>               Defendants. | Civil Case No.:<br><br>**CONSENT TO JOIN LAWSUIT** |

I, Nairoby Otero, hereby consent to join and become a party plaintiff in the above-captioned action (the "Action") to seek relief for unpaid wages and other damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*., including pursuant to 29 U.S.C. § 216(b). I understand that this Action is brought as a collective action under the FLSA and that I must affirmatively opt in by signing and filing this Consent to Join. I authorize Nettle Law LLC and its attorneys to represent me in this Action for all purposes, including settlement negotiations. I understand that I will be bound by any judgment, settlement, or other resolution of the Action, whether favorable or unfavorable, to the extent permitted by law.

*Nairoby Otero*

_____      _____
Nairoby Otero
Print Name                                Signature

_____
08 / 12 / 2026
Date